Consentino *v.* Union Paving Company, Appellant.

Argued April 27, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Hubert J. Horan, Jr.,* and with him *James F. Malone, Jr.,* for appellant.—

*Harry W. Kamin,* for appellee.—

Opinion by Cunningham, J., July 13, 1934:

Defendant appeals from a judgment entered by the court below upon an award of compensation by the referee and board to the Italian Royal Consul of Pittsburgh in behalf of the widow and minor child of Nick Consentino, who died August 7, 1931, from a heat stroke sustained in the course of his employment with Union Paving Company. The only question here involved is raised by the contention of his employer that Consentino's death was not the result of an "accident," within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, and therefore not compensable.

No facts are in dispute. Decedent was employed as a laborer on road construction work. For about an hour before his prostration he had been carrying heavy planks from one point to another. In doing so he was obliged to work rapidly and continuously under a hot sun (the maximum temperature for the day having been 94°); he collapsed within a few minutes

after carrying the last plank, was taken to a hospital and died about four hours later.

Under such circumstances it is clear, we think, that the heat stroke which caused decedent's death resulted from voluntary exposure to the sun's rays under the normal conditions of his employment, but his death was not the natural, probable and to be expected result of such exposure and labor. On the contrary, it was an unusual, extraordinary and unlooked for mishap.

In a long line of cases, from Lane v. Horn and Hardart B. Co., 261 Pa. 329, 104 A. 615, down to our recent case of Clancy v. Booth & Flinn Co., 109 Pa. Superior Ct. 452, 167 A. 393, it has been held that such a death is accidental within the intendment of our compensation statute. Nor is there anything in Howey v. Peppard Bros. et al., 108 Pa. Superior Ct. 119, 164 A. 920, cited by appellant, out of harmony with these cases. We there pointed out there was nothing in the evidence to indicate that the employe's death was occasioned by anything he did after arriving at his place of employment, but was most probably a result of his exertion in walking more than two miles to work on a hot day.

Appellant argues, however, that since decedent's death resulted from an intended and designed exposure to natural conditions, it was not an accident, citing in support of this contention Lacey v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724; Gibson v. Frank Kuhn et al., 105 Pa. Superior Ct. 264, 161 A. 456, and Micale v. Light & S. W. Ins. Fund, 105 Pa. Superior Ct. 399, 161 A. 600. This argument is based upon a misinterpretation of the cases. They do not hold that a death is not compensable merely because it is the result of an intended and designed exposure, but rather that such death, if it is a natural and usual consequence of such exposure, is not an "accident." Thus, in the Lacey case, where the deceased employe,

a carpenter, died of pneumonia, Mr. Justice DREW, speaking for the Supreme Court, said, "The chill from which the death resulted, contracted while working for an hour in a refrigerator where the temperature was from ten to twenty degrees below zero, was not the consequence of a sudden and unexpected event which took place without expectation, a mere chance or contingency. It was not the result of an untoward occurrence, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events. Quite the contrary, it was a natural and usual consequence of his entering and remaining so long in such a place." Similarly, in the Gibson and Micale cases, the pneumonia from which the employes died was not an unforeseeable mishap or fortuitous occurrence, but a natural, probable and foreseeable result of the usual and ordinary conditions of their employment. Obviously, the principles stated in those decisions can have no application to the facts of this case. It is a matter of common knowledge that many men are employed outdoors at heavy labor throughout the heat of summer, yet few suffer heat stroke as a result. Decedent's death, was not, therefore, the usual and natural result of his exposure and work, but a fortuitous occurrence, an untoward event not expected or designed—an accident—coming suddenly and unexpectedly upon him while at work.

In the next place and in further support of its contention that Consentino's death was not accidental, counsel for appellant cites and places great reliance upon the recent case of Landress v. Phoenix Mutual Life Insurance Co., 291 U. S. 491, 54 S. Ct. Reporter 461 in which the Supreme Court of the United States held that a death from sunstroke, as a result of exposure while playing golf, was not caused by "external, violent and accidental means," so as to entitle the

beneficiary of the accident insurance policies in suit to recover thereunder.

There is nothing new in this case. The majority opinion merely recognizes and applies the distinction between an "accidental injury" and an "injury by accidental means," a distinction fully discussed, and illustrated by a review of all the leading cases on both sides of the line, in the opinion of KELLER, J., speaking for this court, in Trau v. Preferred Accid. Ins. Co., 98 Pa. Superior Ct. 89. There, the insured was indemnified by the defendant's policy "against the effect of bodily injury......caused solely by external, violent and accidental means." While strapping a trunk he felt a sliding or pinching sensation in his left groin; a hernia, requiring an operation, developed. He did not slip or fall or do anything he had not intended to do, but the results were more than he expected. It was held that as the voluntary act of strapping the trunk was not interrupted or affected by any outward happening, but, in the exercise of usual and ordinary force, resulted in an unexpected internal strain producing the rupture, that result, though accidental, was not an injury caused by external and accidental means; and that a means is not accidental when employed intentionally, though it produces a result not expected or intended.

The distinction is also clearly recognized by our Supreme Court in Urian v. Equitable Life Assur. Soc., 310 Pa. 342, 346, 165 A. 388, in which it was said, "Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional; that *accidental* injury or death is an unintended and undesigned result arising from acts done, while injury or death *by accidental means* is a result arising from acts *unintentionally done*."

So, in the Landress case it was held that recovery could not be had by merely establishing that the death was an accidental result from the voluntary exposure to the sun's rays, under normal conditions, but, under "the carefully chosen words defining liability" it became necessary to distinguish between the "result and the external means which produces it." There, as in most insurance cases, the indemnity was not against an accidental result but became payable "only if the bodily injury, though unforeseen, is effected by means which are external and accidental." In the concluding paragraph of the opinion Mr. Justice STONE said: "Injury from sunstroke, when resulting from voluntary exposure by an insured to the sun's rays, even though an accident......has been generally held not to have been caused by external, accidental means."

Among the cases cited in support of this statement are: Ismay, Imrie & Co. v. Williamson [1908] A. C. 437, and our own case of Semancik v. Cont'l Casualty Co., 56 Pa. Superior Ct. 392. In the latter, it was held, in an opinion by our late Brother HENDERSON, that under an accident insurance policy, providing indemnity if a "sunstroke......due......to external, violent and accidental means shall result independently of all other causes in the death of the insured," there could be no recovery for a death by sunstroke unless it was shown that the sunstroke was brought about by some concurring accident. In the course of the opinion reference is made to the Ismay, Imrie & Co., case, which arose under an Act of Parliament providing compensation to an employe who sustains "personal injury by accident arising out of and in the course of [his] employment." The employe in that case was overcome by heat in the stoke-hole of a steamship, and the following language of Lord LOREBURN was quoted with approval in Lane v. Horn & Hardart B. Co., supra: "In my view this man died

from an accident. What killed him was a heat stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted by precautions, which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language, it was a case of accidental death.''

In the Semancik case (p. 402) the difference between the terms and object of the usual compensation statute and the provisions of most insurance policies is emphasized; that difference is important and applicable in the case now at bar. Under our compensation act all a claimant is required to establish is "injury by an accident" in the course of employment, or in other words, an "accidental injury," as distinguished from an "injury by accidental means," and we now announce that, in our opinion, decisions construing insurance policies indemnifying against injuries caused by "external, violent and accidental means" are not applicable to cases arising under our compensation statute.

We are convinced that the court below was fully justified, under all the authorities and under the facts developed in this case, in entering judgment upon the award of compensation. It follows that the assignment of error must be overruled.

Judgment affirmed.