RYAN, Respondent, *v.* INDUSTRIAL ACCIDENT BOARD, Appellant.

(No. 7,410.)
(Submitted May 27, 1935.   Decided June 4, 1935.)
[45 Pac. (2d) 775.]

144

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Dousman* argued the cause orally.

*Mr. S. P. Wilson,* for Respondent, submitted a brief and argued the cause orally.

146

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Granite county.

Andrew Ryan was employed by the Montana state highway commission on the main through highway No. 10. The employees of the state highway commission are enrolled under plan 3 of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2990 et seq.) and the Industrial Accident Fund is the insurance carrier. On July 24, 1933, Ryan was working at a point near the town of Drummond picking up rock along the highway. There were five or six other men similarly employed at intervals not far from where Ryan was working. The weather was exceedingly hot. It appears that at nearby points the temperature registered as high as 102 and 110 above zero. During the afternoon Ryan became sick, but continued at his work until quitting time, 5 o'clock. He was sick when he went home and advised his wife and fellow workmen that the "heat had got him." He was not able to eat his dinner, and the next morning was not able to return to work; he became constantly worse, and eleven days later he died. The attending physician, Dr. E. G. Wilcox, of Drummond, made a report in which he designated

the condition of Ryan as thermic fever, exhaustion—anaurexia delirium, failing circulation. Thermic fever as defined by Webster's International Dictionary, second edition, means "fever caused by heat stroke." The employer made report of the occurrence as follows: "Became exhausted from heat and at end of shift went home, drank cold water and suffered a chill, became violently ill and died August 4, 1933, direct result of sun stroke."

Winnie Ryan, widow of deceased, made claim to the Industrial Accident Board on account of the death of her husband. The matter came to hearing before the board. The testimony of the claimant, of fellow workers, of the doctor, and other acquaintances who saw the deceased, was adduced at the hearing in her behalf; no other testimony was introduced. The board denied the application for compensation. Findings of fact were made and conclusions of law entered. The gist of the findings and conclusions of the board is to the effect that while the deceased did die of heat exhaustion, the occurrence did not constitute an "industrial accident" which happened in the course of the employment of deceased and which arose out of his employment. The board found that the conditions under which deceased was working were no different from those obtaining generally at and near the place of his employment. Among other things, these findings recited: "Every man working in the hayfield or on the road in the vicinity of Drummond was subject to the same heat conditions as was Ryan." The board evidently attached considerable importance to the fact that Ryan did not die immediately, but lingered for a period of eleven days, and therefore concluded that he did not suffer sunstroke or heat exhaustion while engaged in the work of his employer.

Appeal was taken to the district court. At the trial the evidence of two additional witnesses was taken as to the intense heat on the day of the occurrence. At the trial in the district court the fact was brought out that the day was an unusually hot one, and that the thermometers did register as high as 110 in the neighborhood. No evidence was offered in resistance of the claim. Thus the facts are admitted and undisputed.

This court has often stated the rule that where the facts are ▊ undisputed, or the evidence is all in one direction, the only questions for decision are those of law, and where there is no conflict in the evidence and the proofs are of such a nature that reasonable men can come to but one conclusion upon them, the case presents in effect an agreed statement of facts. This principle was recently announced in a workman's compensation case. (*Birdwell* v. *Three Forks Portland Cement Co.,* 98 Mont. 483, 40 Pac. (2d) 43, 47.) In that case this court said: "But, where, as here, there is no dispute as to the facts, this court is in as favorable a position in applying the law as the district court, and in such instances, will not hesitate to do so." The only question here for the decision of this court is one of law.

It is apparent that the board did not believe that the undisputed facts were such as to legally justify the payment of compensation to the widow of the deceased. The district court upon the same evidence, supplemented by some additional testimony, made a specific finding to the effect that deceased suffered injury resulting from some fortuitous event and some accidental injury arising out of and in the course of his employment, and which later resulted in his death; it then awarded compensation. From the award, the appeal has come to this court.

Since the decision of the board, this court has decided the *Birdwell Case,* supra, wherein it was held that heat prostration, such as occurred in that case, was an injury and accident within the purview of the Compensation Act. In the *Birdwell Case* the workman was overcome by heat while working near a furnace in a cement plant; here the occurrence took place out in the open. It was doubtless for that reason that the board took the position that, to establish the right of the widow to compensation, the court "would be compelled to decide that any man working out of doors on a very hot day who became ill and died had suffered an industrial accident." It is true that a workman does take all of the risks common to the entire community. We think the true rule was recognized by this court in the case of *Wiggins* v. *Industrial Accident Board,* 54 Mont. 335, 170 Pac. 9, Ann. Cas.

1918E, 1164, L. R. A. 1918F, 932. There the court quoted with approval the following language: "Without attempting to formulate a rule which will include every injury within the meaning of this phrase [injury arising out of his employment], it is sufficient * * * to say that if, by reason of the nature of the employment itself or the particular conditions under which the employment is pursued, the workman is exposed to a hazard peculiar to the employment under the circumstances, and injury results by reason of such exposure, then it may be said fairly that the injury arises out of the employment, or, stated in different terms, the workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject, in order that his injury can be said to arise out of his employment. (Workmen's Compensation Acts; A Corpus Juris Treatise, p. 77.)"

The record in this case discloses that the workman was subjected to a greater heat hazard than were the people of the community generally. Witnesses testified that the road upon which Ryan was working was covered with an oil surface; that "it seemed to get hotter there than in the fields; that the oil seemed to draw the heat, and that it was always hot on this surface." There is ample evidence in the record to sustain the contention that the heat was more intense, and therefore the hazard greater, upon this oiled surface than in the adjacent territory. Witnesses testified that deceased complained of being dizzy during the afternoon; that "he walked around in circles"; that he had a headache, had pain in his abdomen and an intense thirst. The doctor called attention to the subnormal temperature, rapid pulse and cold sweat.

As we suggested in the *Birdwell Case,* supra, there is ample authority for holding that heat prostration does come within the contemplation of Workmen's Compensation Acts. As early as 1917 the supreme court of Minnesota, in the case of *State ex rel. Rau* v. *District Court of Ramsey County,* 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918, recognized this principle and discussed it at length in a case wherein the facts were strikingly similar to those present in this case. There the court

said, in speaking of the occurrence: "That the injury was sustained in the course of the employment is not denied; that it was an 'unexpected and unforeseen event' is not questioned; and we have no difficulty in arriving at the conclusion that it was an event 'producing at the time injury to the physical structure of the body happening suddenly and violently.' It is undisputed that the day was extremely hot. The men had rested for three-quarters of an hour in the shade and had returned to their labor. Decedent was at work near the middle of the street, when, all at once, he was seen to stagger. He had been overcome; had suffered a sunstroke. This was a violent injury produced by an external power, not natural. The foreman came to his assistance, gave him a drink of water, and immediately removed him to a hospital, where his temperature was found to be 110 and pulse 110. He was unconscious, and remained in that state until 11 o'clock that evening. The intense heat of the sun, associated with the humidity of the atmosphere emanating from the wet sand, as an external cause, was a violent agency, in the sense that it worked upon decedent so as to cause his injury and death. The conclusion that his death was caused by violent and external means is inevitable. That a death is unnatural imports a violent agency as the cause. [Citing cases.]" Many cases may be found to the same effect. (See *Birdwell* v. *Three Forks Portland Cement Co.*, supra; *Walsh* v. *River Spinning Co.*, 41 R. I. 490, 103 Atl. 1025, 13 A. L. R. 956; *Lane* v. *Horn & Hardart Baking Co.*, 261 Pa. 329, 104 Atl. 615, 13 A. L. R. 963; *Texas Employers' Ins. Assn.* v. *Moore*, (Tex. Civ. App.) 279 S. W. 516; *Kallgren* v. *C. W. Lunquist Co.*, 172 Minn. 489, 216 N. W. 241; *King* v. *Buckeye Cotton Oil Co.*, 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086; *Kripplaben* v. *Jos. Greenspon's Sons etc. Co.*, 227 Mo. App. 161, 50 S. W. (2d) 752; *Pearson* v. *Ford Motor Co.*, 186 Minn. 155, 242 N. W. 721; *Fidelity & Casualty Co.* v. *Burris*, 61 App. D. C. 228, 59 Fed. (2d) 1042; *L. C. Kimsey Heating etc. Co.* v. *House*, 152 Okl. 200, 4 Pac. (2d) 59; *Lobert & Klein* v. *Whitten*, 150 Okl. 72, 300 Pac. 636; *Baltimore & Ohio R. Co.* v. *Clark*, (C. C. A.) 59 Fed. (2d) 595.)

This case is only distinguishable from the *Birdwell Case,* supra, on two grounds: (1) The disability here occurred in the open, outside of any inclosure, and from sun heat, instead of artificial heat from furnaces, as in the *Birdwell Case;* and (2) in the *Birdwell Case* it was contended that the workman died from myocarditis, a cause independent of the heat, whereas here the cause of the death was admittedly heat stroke. It is true that Birdwell died shortly after the stroke, while here the man lived eleven days. That fact, however, does not affect the situation or constitute grounds for a legal distinction. There can be no question under the evidence in this case that the death of the workman was a direct result of the heat stroke. Such being the case, the fact that he did not suffer death immediately is not important. The important question is, Was the death reasonably traceable to and the result of the injury? There can be no doubt about that here. (*Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973; *Williams* v. *Brownfield-Canty Carpet Co.,* 95 Mont. 364, 26 Pac. (2d) 980; *Birdwell* v. *Three Forks Portland Cement Co.,* supra; *Woin* v. *Anaconda Copper Min. Co.,* 99 Mont. 163, 43 Pac. (2d) 663.) It follows that in the circumstances of this case we are forced to the conclusion that the workman did suffer injury resulting from some fortuitous event, and did suffer accidental injury arising out of and in the course of his employment. We must, therefore, agree with the district court.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.